DUNCAN et al. v. ATLANTIC, M. & O. R. CO. et al.[1]

(Circuit Court, E. D. Virginia. October 30, 1880.)

1. BILL OF REVIEW—TIME OF FILING.
    A bill to review a decree of foreclosure and sale comes too late after the lapse of two entire terms since the entry of the decree.

2. SAME—APPEAL.
    In respect to the time allowed for taking an appeal or filing a bill of review, a final decree of foreclosure and sale takes effect from the date of its entry, and not from the date of appointment of a master to make the sale.

3. RAILROAD FORECLOSURES—POSTPONEMENT OF SALE.
    A sale of a railroad in foreclosure proceedings will not be postponed merely because the road is more prosperous than for some time past, when it would take nearly 10 years of such prosperity to pay the already overdue interest on the mortgage debt.

[1] This case has been heretofore reported in 4 Hughes, 125, and is now published in this series, so as to include therein all circuit and district court cases elsewhere reported which have been inadvertently omitted from the Federal Reporter or the Federal Cases.

**4. SAME.**

It is too late, two days before the date fixed for the sale, to ask for its postponement without a tender of the debt, or what is equivalent to a tender.

**5. SAME—MODIFICATION OF DECREE OF SALE.**

When more than a year and a half has elapsed since the entry of a final decree of foreclosure and sale of a railroad, such decree will not be modified so as to reduce the amount of the cash payment required, on an application made only two days before the date fixed for the sale. If any party suffers from any obscurity or harshness in the terms of the decree, he may, after the sale, object on that ground to its ratification.

This was a suit in equity, against the Atlantic, Mississippi & Ohio Railroad Company and others, to foreclose a mortgage on said company's road and property. A final decree of foreclosure and sale was entered on May 9, 1879. See Fed. Cas. No. 12,922, where the decree is set out in full. The decree provided that the sale should be made by a master "hereafter to be specially appointed for that purpose." The appointment was not in fact made until July 9, 1880. The sale was then set for the 1st day of November following. A few days prior to that time, a bill of review was filed by the state of Virginia, in whose favor a third mortgage on the property was reserved by statute, alleging, among other things, that she had taken an appeal from the decree of foreclosure and sale. This bill was accompanied by a motion to postpone the sale. A petition for postponement was also filed by the defendant company. Similar motions were also made by the cities of Lynchburg and Petersburg, which were both holders of stock and bonds in the defendant corporation. All these matters were heard together by the court.

BOND, Circuit Judge. This bill of review has been filed after a lapse of two entire terms of the court since the entry of the decree sought to be reviewed, and is therefore too late, under rule 88 in equity. But even if this were not so, the bill could not be entertained. The state having appealed, it has no right to file a bill of review. If the errors set forth in the bill offered are apparent on the record, they have been so apparent ever since the final decree which is appealed from was filed. It is these errors the state asks the supreme court to correct. If the reasons for the bill are that new facts have come to the knowledge of parties since the filing of the final decree, then its offer is too late. The final decree takes effect from the time of its record, and not from the appointment of the officer to execute it. In reference to the petition of the defendant company, there is no cloud on the title such as is now set up, which has not heretofore been determined to be no obstacle, so far as the parties in this suit are concerned, to the foreclosure of the mortgage and the sale of the mortgaged premises. And, as for the reasons set forth that the road is more prosperous than heretofore, we think they ought to have no weight with the court, and afford no sufficient ground to postpone the sale ordered. It would, after all the success which has attended the management of the receivers, take nearly 10 years of such success continued to pay the already overdue interest of this mortgage debt. The defendant company offers no guaranty that such prosperity will continue. It proposes to go further in debt, and to incumber the

complainants' security further to pay a present obligation. The complainants' debt is ascertained. They are entitled to execution therefor, and it was never heard to prevent such execution that the mortgagor, having been unfortunate in business, had now great hope of more success hereafter, to realize which the mortgagee ought to wait for him.

It appeared, however, that the master had omitted to serve written notice on the attorney general of the state of Virginia, and on the board of public works of the state, at least 90 days before the sale, as directed by the foreclosure decree; and, in order to afford opportunity for the giving of these notices, the court entered an order directing the master to adjourn the sale until February 10, 1881. On the 8th day of February, two days before the time designated for the sale, the defendant company, by its counsel Benjamin F. Butler, renewed its motion for a postponement. After argument, the court rendered its decision in the following terms:

BOND, Circuit Judge. This is a motion on the part of the mortgagor to postpone the sale ordered by the decree in this case filed May 9, 1879. The case has been pending in this court for nearly five years, and has regularly proceeded with no prospect of any other result than the one it is about to reach. The mortgagor has allowed the time for redemption to pass, and alleges in argument that it has been too poor to do so ever since the bill was filed. The motion before us is not made upon any proof or showing that the finances of the mortgagor have at all improved, nor that it has been promised the certain aid of any capitalist to enable it to redeem. It merely alleges that it believes that, if the court would make certain provisions in the order opening the present decree and postponing the sale, the company would be able to redeem. The facts upon which that belief is founded are not given, and the court can look at it in no other light than as the ordinary lingering hope of a debtor that his financial condition will somehow improve. The mortgagor, to be sure, offers to put in the registry of the court the sum of $100,000 to be security for costs and loss of interest caused by the postponement of the sale; but it does not offer to pay now the defaulted interest, nor to allow the $100,000 as a penalty for not redeeming, as it says it expects to do. Under these circumstances, the court does not think that it would be equitable to open its decree, and make the complainants risk the rise and fall of the present inflated market and the accumulation of interest, and the risk of loss of business and consequent diminished receipts of the road, but thinks the company has had abundant time to make its arrangement to redeem had it any prospects of doing so. The fact that the charters of Lynchburg and Petersburg do not allow those cities to borrow money, being large stockholders, to aid in redemption, and that the state legislature is not in session, does not alter the matter. It is too remote to prophesy what those corporations would do were they assembled; and certainly to postpone the complainants from the foreclosure of their mortgage on such a remote contingency or expectation would be most inequitable, especially as

the security for the remuneration for loss by delay, should there be such loss, is, as we have said, so inadequate.

The complainants applied for a decree of sale at the October term, 1877. The court did not grant the decree till May, 1879, although the complainants made persistent and very frequent applications throughout the whole period of delay. After the decree, the court did not order a sale till July, 1880, complainants meantime pressing continually for such order. During the whole of this delay, no effort was made by defendant company to redeem its property. It is too late, two days before the sale, to ask for its postponement, without a tender of the debt, or what is equivalent to a tender. During the whole of this delay, the court felt it was taking great responsibility; but, fortunately, the revival of business and the admirable conduct of the receivers have prevented any loss from this delay; and we do not, upon so indefinite a proposition as is now made, at this stage, propose to continue such risk. The defendant company must take its chances at sale along with all other bidders in open market.

The cause was then heard on a motion by the defendant company to modify the terms of the decree of sale, so as to reduce the amount of cash to be paid by the purchasers to the sum required to pay the interest then due, and the costs of the sale.

HUGHES, District Judge. The decree already passed states what is to be sold, and the method of sale, and determines the rights of the parties; and after so long a time since its filing and the advertisement of the sale provided by it, and on the eve of the sale, the court will not alter it, no objection to it having been made heretofore by any party to the suit. If there is any difficulty created by its terms in the bidding, and it can be shown after the sale that bidders were hindered by any obscurity or harshness of its terms, the party suffering from that defect can come into court, and object to the ratification of the sale on that ground. If the decree as it now stands results in a sale for an inadequate price, when the court comes to consider the master's report of sale, then will be proper time for reaching the objection now urged. In general, we think we have no power to amend the decree in any particular after so long a time has passed since it was pronounced.

The sale was therefore had, on February 10, 1881, and the road and property was bought in for a syndicate whose members subsequently organized the Norfolk & Western Railroad Company. The sum realized was $8,605,000, over and above certain prior mortgages subject to which the sale was made. The decree confirming the sale was as follows:

### Decree Confirming Sale.

And now, on this 4th day of April, 1881, the report of Mathew F. Pleasants, the master heretofore appointed by this court to make sale of the mortgaged premises, having been heretofore duly made and filed, a copy of which report is as follows, to wit, [omitted herefrom]; and it appearing to this court, and the court finds the facts so to be, that the thirty-days notice to the purchaser and the defendant's solicitors, as required by said decree herein, of the presentation of said report for confirmation of said sale to be

made at this time and place, has been duly given; and thereupon said report of sale being now presented to this court by the complainants' solicitors, and motion made by them that the same be confirmed, and the same having been duly considered,—it is hereby ordered that the report of said master of said sale, and said sale, be, and the same are, in all respects confirmed. Thereupon the complainants' solicitors submitted to this court forthwith a draft deed of conveyance from the said master to the purchaser, as provided by the decree herein, which draft deed of conveyance, is in the words and figures following, to wit:

### Deed Conveying to Purchaser a Railroad Sold under Foreclosure.

"This indenture, made this —— day of ——, in the year one thousand eight hundred and eighty-one, between Mathew F. Pleasants, specially appointed a master by an order of the circuit court of the United States for the Fourth judicial circuit and the Eastern district of Virginia, made in the case hereinafter mentioned, for the purpose of making the sale hereinafter referred to, party of the first part, Clarence H. Clark, of the city of Philadelphia, of the second part, and the Norfolk and Western Railroad Company, a corporation of the state of Virginia, to be created and constituted as hereinafter mentioned, party of the third part:

"Whereas, the Atlantic, Mississippi and Ohio Railroad Company was formed under and in pursuance of an act of the general assembly of the state of Virginia, entitled 'An act to authorize the formation of the Atlantic, Mississippi and Ohio Railroad Company,' approved June the seventeenth, one thousand eight hundred and seventy (Laws 1870, p. 181), and heretofore, and on or about the ninth day of September, one thousand eight hundred and seventy-one, duly made and executed under its corporate seal, and delivered to Francis Skiddy, William Butler Duncan, and Samuel L. M. Barlow, trustees, its deed of trust bearing date on the last-mentioned day, whereby it granted, bargained, and sold, aliened, assigned, and conveyed to the said trustees all the right, title, and interest which the said railroad company then had or might afterwards acquire in and to its franchises, its entire line of railway constructed or to be constructed, extending from Norfolk, in the state of Virginia, to Cumberland Gap, in the state of Kentucky, together with all branches thereof constructed or to be constructed, together with the tolls, incomes, rents, issues, and profits thereof, and all real estate, rights of way, easements, fixtures, rolling stock, machinery, tools and equipments, and all other personal property thereunto belonging; the true intent of said deed of trust being thereby declared to be to vest all and every the property and right of property, real, personal, and mixed, and all the corporate powers and franchises, of every kind whatsoever, belonging or appertaining to the said railroad company, or thereafter to be acquired, touching the aforesaid lines of railroad, in the said Francis Skiddy, William Butler Duncan, and Samuel L. M. Barlow, trustees, the parties of the second part, to the said deed of trust, to have and to hold the said premises, property, rights, franchises, and appurtenances to the said trustees, as joint tenants, and not as tenants in common, upon certain trusts in the said deed of trust expressed, for the benefit and security of the holders of certain fifteen thousand bonds of said company proposed to be issued and negotiated by it for $1,000 each, and amounting together to $15,000,000, all bearing even date with the said deed of trust, and payable in gold coin of the United States on the first day of October, nineteen hundred and four, with interest thereon at the rate of seven per cent. per annum, also in gold, payable semiannually, according to the tenor of the coupons annexed to the said bonds, free of all United States government tax, as by the said deed of trust, or the record thereof, will, reference thereto being had, more fully appear.

"And whereas, there were issued by the said railroad company five thousand four hundred and seventy of the said fifteen thousand of bonds, and default having been made in the payment of the installments of interest which accrued thereon on the first day of October, one thousand eight hundred and seventy-four, and the first day of April, one thousand eight hundred and seventy-five, the said Francis Skiddy, William Butler Duncan, and Samuel L. M. Barlow, such trustees, as aforesaid, heretofore filed their bill in the

circuit court of the United States for the Eastern district of Virginia against the said Atlantic, Mississippi and Ohio Railroad Company and others, for the foreclosure or enforcement of the said deed of trust; and such proceedings were thereupon had that afterwards, and on the ninth day of May, one thousand eight hundred and seventy-nine, at a term of the said circuit court holden at Norfolk in Virginia, a decree was made in the said cause, whereby it was, among other things, declared and decreed by the said court that the said deed of trust was a valid conveyance of the railroad, franchises, and property of the said railroad company for the security of the mortgage bonds therein set forth; that the said bonds were duly issued, and the same and the proceeds thereof lawfully disposed of and dealt with under and according to the said statute of the state of Virginia, approved June the seventeenth, one thousand eight hundred and seventy, and that the said deed of trust vested in the complainants in the said cause as trustees, for the purposes therein mentioned, and according to the tenor thereof, a good and valid title to all and singular the property and franchises therein described, subject only to the lien thereon in the said decree set forth. And it was then provided by the said decree, in the third paragraph thereof, as follows, that is to say: 'The court declares and decrees that the franchises and property conveyed by the said trust deed of September the ninth, one thousand eight hundred and seventy-one, to the complainants, trustees, by the Atlantic, Mississippi and Ohio Railroad Company by way of mortgage, described as near as may be, are as follows, that is to say: All the right, title, and interest of the said Atlantic, Mississippi and Ohio Railroad Company in and to the franchises of the said company, its entire line of railroad then constructed or thereafter to be constructed,—in fact, extending from Norfolk, in the state of Virginia, to Cumberland Gap, in the state of Kentucky,—together with all branches of the said line of railroad then constructed or thereafter to be constructed, with the tolls, incomes, rents, issues, and profits thereof, and all real estate, rights of way, easements, fixtures, rolling stock, machinery, tools, and equipments, and all other personal property thereto belonging, and all property, real, personal, or mixed, and all corporate powers and franchises belonging or appertaining to the said Atlantic, Mississippi and Ohio Railroad Company then possessed by the said company, or thereafter to be acquired by the said company; and for all the purposes of this decree the inventory of the receivers may be referred to for a more full and detailed description of the mortgaged premises. The description also includes all additions to the mortgaged property and premises made or to be made by the receivers, and also all railroad supplies which the receivers may have on hand at the time of sale, or may acquire thereafter before delivery of possession.' And it was in and by the said decree further declared and agreed that the estate and interest of the complainants in the said cause in the said premises were, at the date of the said decree, subject to the prior liens therein particularly described, and that subject to such prior liens to the extent that they might be outstanding at the time of the sale in the said decree provided for, with interest then accrued on the sums of money secured thereby, the said premises must be sold, as afterwards directed by the said decree, and that there was a default on the part of the said railroad company in the payment of the installments of interest upon the bonds issued under the said deed of trust to the complainants, due and payable according to the tenor thereof on the first day of October, one thousand eight hundred and seventy-four, and on the first day of April, one thousand eight hundred and seventy-five, and that since the last-named date no part of such interest had been paid, and that the amount of such interest which had become and remained due and payable was, at the date of the said decree, the sum of one million nine hundred and thirty-two thousand six hundred and eighty-seven dollars and seventy-five cents, and that the mortgaged premises could not be sold in parcels without loss and prejudice to all parties interested therein, and that the nature and situation of the property was such that the interest of all parties required that it should be sold as an entirety. And it was in and by the said decree further ordered and decreed that the board of public works, or the state of Virginia, defendants in the said cause, pay into the registry of the said court, on or before the second Tuesday of

January next, after the making of said decree, the amount of the debt ascer-tained and declared to be due as aforesaid from the said railroad company to the complainants in the said cause, and such further sum as might be-come due in the meantime for interest upon the bonds secured by the said deed of trust; and that in default thereof the said board of public works and the state of Virginia be forever barred and foreclosed of and from all claim, lien, and equity of redemption of, in, or to the property and fran-chises embraced in or covered by the said deed of trust; and that thè said defendant the Atlantic, Mississippi and Ohio Railroad Company pay into the registry of the said court, on or before the said second Tuesday of Jan-uary then next, the amount ascertained and declared to be due by the said railroad company to the said complainants as aforesaid, under the said deed of trust, together with the costs of the said cause; and that, unless pay-ment should be made by the said board of public works, the state of Vir-ginia, or the said railroad company, as so provided in the said decree, all and singular the property and franchises of every kind described in the third paragraph of the said decree be sold by a master to be specially appointed for that purpose, subject to the amount of the prior liens and incumbrances found and stated in the fourth paragraph of the said decree, as the same might exist at the time of the sale, and subject also to all executory contracts made by the receivers in the said cause under the authority of the said court (of which the said receivers were directed to give the master, on his request, a full and accurate statement, and which contracts, if any, should be pub-licly announced by the master at the time of sale), and subject also to any liability that might be thereafter established against the said receivers grow-ing out of any lawful acts done by them in their capacity of receivers, and that such liabilities, if any, would remain a lien upon the said premises un-til discharged. And it was further provided in the said decree that such sale (unless stayed by such payment as aforesaid) should be made at some convenient place in the city of Richmond, to be designated by the master; that he give notice of the time and place of sale by an advertisement thereof to be inserted once in each week for not less than ninety days before the sale in a newspaper published in each of the cities of Norfolk, Petersburg, Lynchburg, Richmond, and Goodson, in the state of Virginia, and in the city of Baltimore, in the state of Maryland, in the city of Philadelphia, in the state of Pennsylvania, in the city of New York, in the state of New York, in the city of Boston, in the state of Massachusetts, in the city of London, England, and once in each month for the same period in one newspaper pub-lished in each of the cities of Amsterdam and Groningen, in the kingdom of the Netherlands; that the master should also serve written notice to the like effect upon the attorney general of the state of Virginia, and the board of public works of the said state, at least ninety days before the sale; that the master should sell the premises by the said decree directed to be sold to the highest bidder, and that he should require such bidder, before mak-ing an adjudication to him, to pay in cash the sum of one hundred thousand dollars, and, if the sale be confirmed by the court, that the balance of the purchase money, as provided in the said decree, must be paid within thirty days, but that the purchaser should have the right to anticipate the day of payment; that the master report the sale and proceedings under the said decree to the said court with all convenient speed, and give notice thereof to the said complainants' solicitors, and that they might present said re-port to the said court on thirty days' notice to the purchaser and the de-fendants' solicitors in the same cause; that if, on presentation and consid-eration of the said report of sale, which should be at a stated or special term, sitting in open court, the court should confirm the sale, the said complain-ants' solicitors must forthwith prepare and submit to the court a draft deed of conveyance from the master to the purchaser, and that upon the settle-ment of the form thereof, and upon due compliance with the terms of sale by the purchaser, the master must execute and deliver such deed of convey-ance to the purchaser; and that the purchaser or his successor or successors in interest would then and thereupon be let into possession of the premises; and that the purchaser would also at the same time be entitled to receive all books, maps, plans, papers, records, and documents of the said defend-

ant company, and of the several divisional companies in the said decree mentioned, and relating to all extension or branch roads of the said companies, and of the receivers, relating and appertaining to the franchises and property in question, and would likewise be entitled to receive, by way of further protection to the title, a transfer of all shares of the capital stock of the several divisional companies in said decree mentioned which were owned or held by the Atlantic, Mississippi and Ohio Railroad Company at the time of the filing of the original bill of complaint in said court; and that such purchaser would likewise be entitled to receive, by way of further protection to the title, the bonds mentioned in the nineteenth paragraph of the said decree. And it was, among other things, further adjudged and decreed in and by the said decree that, by the sale and conveyance to be made as aforesaid of the property and franchises so decreed to be sold by said master, the defendants in the said action, and each and every of them, including the state of Virginia and the board of public works of the said state, and all persons claiming under them, or any of them, subsequently to the commencement of the said action, should be absolutely and forever barred and foreclosed of and from all estate, right, lien, claim, and equity of redemption of, in, or to, or in respect of, said property and franchises so sold and conveyed, and each and every part thereof, as by the said decree will, reference thereto being had, more fully and at large appear.

"And whereas, the said board of public works, the state of Virginia, and the said railroad company made default in the payment of the sums required to be paid by them as aforesaid by the said decree, and by an order of the said circuit court made in the said cause on the fourth day of June, eighteen hundred and eighty, the party thereto of the first part was specially appointed a master to make the sale directed to be made by the said decree, and he having designated the north front door of the custom house of the United States, in the city of Richmond, Virginia, to be a convenient place for the making of such sale, and having given public and other notice of the time and place of such sales as required by the said decree, he did, on the tenth day of February, in the year eighteen hundred and eighty-one, at twelve o'clock at noon of that day, and at the said door of the United States custom house, sell at public auction, in pursuance of the said decree, the premises, property, and franchises as therein directed to be sold; and at such sale the said premises were knocked down for the sum of eight million six hundred and five thousand dollars (8,605,000), to Clarence H. Clark, of Philadelphia, he having bid for the said premises, property, and franchises for and on behalf of himself and associates, intending to have the same conveyed to a corporation to be created and named in the conveyance thereof, in accordance with the statutes of the state of Virginia, by which it is provided that if a sale be made under a deed of trust or mortgage executed by a company on all its works and property, or under a decree of a court having competent jurisdiction, and there be a conveyance pursuant thereto, such sale and conveyance pass to the purchaser at the sale, not only the works and property of the company as they were at the time of making the deed of trust or mortgage, but any works which the company may after that time, and before the sale, have constructed, and all other property of which it may be possessed at the time of the sale, other than debts due to it; and that, upon such conveyance to the purchaser, the said company shall ipso facto be dissolved, and that said purchaser shall forthwith be a corporation by any name which may be set forth in the said conveyance, or in any writing signed by him, and recorded in the court in which the conveyance shall be recorded; and that the corporation created by or in consequence of such sale and conveyance shall succeed to all such franchises, rights, and privileges, and perform all such duties, as would have been had or should have been performed by the first company but for such sale and conveyance, save only that the corporation so created shall not be entitled to the debts due to the first company, and shall not be liable for any debts of or claims against the first company which may not be expressly assumed in the contract of purchase; and that the whole profit of the business done by such corporation shall belong to the said purchaser and his assigns; and that his interest in the corporation shall be personal estate, and he or his assigns

may create so many shares of stock therein as he or they may think proper, not exceeding together the amount of stock in the first company at the time of sale, and assign the same in a book to be kept for that purpose.

"And whereas, the said Clarence H. Clark did, in accordance with the said decree, pay as a deposit the sum of one hundred thousand dollars at the time when the said premises, property, and franchises were knocked down.

"And whereas, it has been declared by the said Clarence H. Clark that the name of the corporation created as aforesaid shall be the Norfolk and Western Railroad Company, and it is accordingly set forth in this conveyance by that name.

"And whereas, it has been urged by said Clark and his associates that the corporation named as aforesaid, to wit, the Norfolk and Western Railroad Company, should be designated as the corporation to whom the conveyance should be made under and in pursuance of the statutes of the state of Virginia hereinbefore mentioned or referred to; that the said Clarence H. Clark should provide and furnish, and pay and satisfy, in pursuance of the requirements of the decree, the unpaid residue of the purchase money agreed to be paid for said premises upon the bid and purchase made at the master's sale aforesaid; and that, in consideration thereof and of such designation as aforesaid of the said Norfolk and Western Railroad Company, the said corporation thus formed under the title of the Norfolk and Western Railroad Company should deliver to the said Clarence H. Clark, of Philadelphia, the following described securities, that is to say: Certain general mortgage bonds of the said Norfolk and Western Railroad Company to the aggregate amount of five million three hundred and sixty-three thousand dollars ($5,363,-000), bearing interest as agreed, secured by a mortgage or deed of trust covering the premises, property, and franchises so purchased, made to the Fidelity Insurance, Trust and Safe-Deposit Company of Philadelphia as trustee, also one hundred and fifty thousand shares of full-paid and unassessable preferred six per cent. capital stock of the Norfolk and Western Railroad Company, and also thirty thousand shares of full-paid and unassessable common capital stock of the Norfolk and Western Railroad Company; that general mortgage bonds of the said Norfolk and Western Railroad Company to the aggregate amount of five million one hundred and thirty-seven thousand dollars ($5,137,000) should be reserved by the company, and used only for the purpose of retiring, paying, purchasing, and satisfying the nonexisting divisional securities, having lien or security upon divisions or portions of the property, roads, and franchises hereby conveyed, and the general mortgage bonds of the said Norfolk and Western Railroad Company to the aggregate of five hundred thousand dollars ($500,000) should be retained in the treasury of the Norfolk and Western Railroad Company, the several mortgage bonds thus to be issued and delivered by the said Norfolk and Western Railroad Company to be a charge and be mortgage liens upon all and singular the premises, property, and franchises hereby conveyed to the said Norfolk and Western Railroad Company by the master, in accordance with the tenor and effect of the said several bonds and the mortgage or deed of trust so to be given for securing the same, and upon the terms and conditions specified in said mortgage.

"And whereas, the said master made his report to the said court of the sale made by him as aforesaid, and of the proceedings under the decree, and gave notice of said report to the said complainants' solicitors as required by the said decree, and they having first given such notice to the purchaser and to the defendants' solicitor, in the said cause, as is prescribed by the said decree to be given to the purchaser, and the complainants' solicitors afterwards, and on the fourth day of April, in the year one thousand eight hundred and eighty-one, presented the said report of the sale and of other matters aforesaid to the said court, sitting in open court, at a stated term thereof, held at the United States circuit court room in the city of Richmond; and thereupon the said court, upon consideration of the said report, and with the assent of the said Clarence H. Clark, by an order made in the said cause on the said last-mentioned day, confirmed the said report, and the said sale so as aforesaid made by the said master, and further ordered and directed that, upon the terms of the sale made by said master being com-

plied with by payment of the unpaid residue of the purchase money, the said Norfolk & Western Railroad Company be deemed the purchaser of said premises, property, and franchises sold by said master under said decree, and that said master thereupon, and upon the form of the deed being duly approved, convey said premises, property, and franchises to the Norfolk and Western Railroad Company, as purchaser thereof.

"And whereas, the complainants' solicitors thereupon forthwith, in pursuance of the said decree, prepared and submitted to the court a draft deed of conveyance from the master to the Norfolk and Western Railroad Company, as such purchaser, and the same has been settled and approved in the form and tenor of this indenture.

"And whereas, the terms of the said sale made by the master have been duly complied with on the part of the purchaser from him, and the said Clarence H. Clark of Philadelphia. by becoming party hereto, declares that this conveyance of the Norfolk and Western Railroad Company is made by his appointment, at his request, and with his approval:

"Now, therefore, this indenture witnesseth, that the said party of the first part, in order to carry into effect the said sale so made by him as aforesaid in pursuance of the aforesaid order made by the court on the fourth day of April, eighteen hundred and eighty-one, and also in consideration of the premises and of the said sum of eight million six hundred and five thousand dollars ($8,605,000), the money so bidden as aforesaid at the auction sale made by said master being first duly paid as ordered and directed by the court, the receipt of which is hereby acknowledged, hath granted, bargained, sold, and conveyed, and doth hereby grant, bargain, sell, and convey, unto the said Norfolk and Western Railroad Company, party of the third part, that being the name and corporate title of the purchaser set forth in this conveyance in pursuance of the statute of the state of Virginia in that behalf, and to the successors and assigns of the said Norfolk and Western Railroad Company forever, all and singular the premises directed to be sold by the said decree, being the franchises and property conveyed by the said decree of trust of September 9th, eighteen hundred and seventy-one, to the complainants in the said cause by the Atlantic, Mississippi and Ohio Railroad Company by way of deed of trust or mortgage, and which are described as near as may be in the third paragraph of the said decree, as follows, that is to say: All the right, title, and interest of the said Atlantic, Mississippi and Ohio Railroad Company in and to the franchises of the said company, its entire line of railroad then constructed or thereafter to be constructed, in fact extending from Norfolk, in the state of Virginia, to Cumberland Gap, in the state of Kentucky, together with all branches of the said line of railroad then constructed or thereafter to be constructed, with the tolls, incomes, rents, issues, and profits thereof, and all real estate, rights of way, easements, fixtures, rolling stock and machinery, tools and equipments, and all other personal property thereto belonging, and all property, real, personal, or mixed, and all corporate powers and franchises belonging or appertaining to the said Atlantic, Mississippi and Ohio Railroad Company then possessed by the said company, or thereafter to be acquired by the said company, including everything contained in the inventory of the receivers in the said cause, and not heretofore disposed of in the business of managing the said property and running the said road, and including also all additions to the said property and premises made by the said receivers; and also all railroad supplies which the said receivers had on hand at the time of said sale, or acquired thereafter before the delivery of the possession of the premises hereby granted to the said party of the third part, in so far as the same still remains unconsumed and in their possession or control; and including all the properties, franchises, rights, privileges, and things whatsoever which by the said decree were directed to be included in the sale made by the master thereunder: to have and to hold, all and singular, and premises, properties, franchises, rights, privileges, and things above mentioned and described, and hereby conveyed, or intended so to be, unto the said party of the third part, and its successors and assigns, forever, subject, nevertheless, to the liens upon the said premises prior to the said deed of trust of September 9th, 1871, as ascertained by the said decree, and existing at the time

88 F.—54

of the said sale and of this conveyance, and subject also to all existing contracts made by the said receivers under the authority of the said court, a statement of which has been given by them to the said master, and appears by the said report of sale, and to all such contracts made by said·receivers since the date of said sale, said road since the date of said sale having been run, and said property operated and managed, by the receivers, on account of and for the benefit of the purchasers, and subject also to any liability established, or that may be hereafter established, against the said receivers, growing out of any acts done by them in their capacity of receivers, and all the foregoing liabilities on contract or otherwise shall be and remain a lien on said premises till the same are duly discharged.

"In witness whereof, the said party of the first part, as such master in chancery, hath hereto set his hand and seal, the day and year first above written; and the said Clarence H. Clark also sets his hand and seal hereto, as naming the Norfolk and Western Railroad Company as the corporation to whom the conveyance is to be made, and as declaring that the conveyance is so made by his appointment, at his request and with his approval.

"————. [Seal.]
"————. [Seal.]

"Sealed and delivered in the presence of ————."

And, the said draft deed of conveyance having been duly considered by this court, the same is now, and hereby, settled and approved. And it is hereby further ordered, adjudged, and decreed that the said master, Mathew F. Pleasants, when and so soon as the balance of said purchase money mentioned in said report of sale shall have been paid as hereinafter provided, shall make, execute, and deliver a deed of conveyance in the form aforesaid to the Norfolk and Western Railroad Company, being the name of the corporation designated as purchaser by said Clark, to whom said property was sold, as set forth in said draft deed of conveyance. And it is further ordered that the purchaser, on or before the 3d day of May, 1881, pay the balance of said purchase money over and above the one hundred thousand dollars paid at the time said property was bid off at said sale, as follows, to wit: Five millions of dollars thereof into the Union Trust Company, of the city of New York, subject to the order of this court in this cause; and three million two hundred dollars thereof into the Fidelity Insurance, Trust and Safe-Deposit Company of Philadelphia, subject to the order of this court in this cause; and the remainder of said purchase money (except the one hundred thousand dollars now deposited in the Planters' National Bank of Richmond), amounting to three hundred and five thousand dollars, shall be paid by the purchaser into the National Exchange Bank of Norfolk, Virginia, subject to the order of this court in this cause; and the said purchaser shall take duplicate certificates of deposit of said trust companies and of said National Exchange Bank of Norfolk, and deliver the same to the said master, who shall safely keep one set, and deliver the same into this court, and the other set said master shall deliver to the complainants' solicitors. And it is further ordered that upon the delivery as aforesaid of said duplicate certificates to the said master for the whole amount of said purchase money, to wit, for the sum of eight million six hundred and five thousand dollars, less one hundred thousand dollars now deposited in the Planters' National Bank of Richmond, the said master forthwith execute and deliver said deed to the purchaser; and thereupon the possession of the premises and property set out in said decree and report of sale shall vest in the Norfolk and Western Railroad Company, the grantee named by said Clarence H. Clark, who was the highest bidder at said sale, as the corporation to which said conveyance should be made; and the receivers shall thereupon hand over and deliver the said premises and property to the said Norfolk and Western Railroad Company.                .Hugh L. Bond, Circuit Judge.

Richmond, April 4, 1881.        · ·        Ro. W. Hughes, District Judge.

## Decree for Payment of Complainants' Claim.

Upon reading and filing the special report of Charles L. Perkins and M. F. Pleasants, master, bearing date this day, showing the amount of bonds

and coupons outstanding secured by the mortgage or deed of trust to the complainant mentioned in the final decree herein, and by whom the same are held as far as ascertained by them, and the amounts due for principal and interest thereon to this date, it is, on motion of the complainants' solicitors, ordered: That ninety-five per cent. of the principal of said bonds, and the entire amount of the interest accrued thereon since the 1st day of April, 1881, to the 3d day of May, 1881, and the entire amount due upon the coupons and interest thereon to the 3d day of May, 1881, as stated in said report, be paid at once out of the purchase money this day paid into court by the purchasers; and that Charles L. Perkins be, and he is hereby, appointed a special master to superintend such payment, and to receive and cancel the said coupons as paid, and to stamp upon said bonds the said payment of ninety-five per cent. when made. That upon delivery to said master for cancellation of the coupons, and upon presentation to him of the bonds held by it, as stated in said report, the Union Trust Company of New York, out of the moneys held by it subject to the order of the court in this cause, apply and pay to the owners of said bonds and coupons, respectively, ninety-five per cent. of the principal of said bonds held by it, to wit, 5,452 bonds, of one thousand dollars each, and the entire amount of the interest accrued thereon, from the 1st day of April, 1881, to the third day of May, 1881, and also the entire amount due for principal and interest to the third day of May, 1881, upon said coupons held by it as stated in said report; and thereupon the said master receive and cancel said coupons as paid, and deposit the same in the office of the clerk of this court at Richmond, and stamp upon each of said bonds the following words: "Ninety-five per cent. of the principal, and all the interest due upon this bond, paid this ———— day of ————, 188-, by the order of the United States circuit court for the Eastern district of Virginia, dated May 3d, 1881, in the suit of Barlow and Duncan, surviving trustees, against the Atlantic, Mississippi and Ohio Railroad Company and others. Charles L. Perkins, Special Master." That in like manner, upon the delivery to said master for cancellation by the several firms of Morton, Bliss & Co., Clarke, Post & Martin, and Knauth, Nachod & Kuhne, of the coupons held by those firms, respectively, as shown by said report, at the office of said Union Trust Company, and upon the written order and direction of the said master, the Union Trust Company, out of the moneys held by it subject to the order of the court in this cause, pay to said firms, respectively, the entire amount due for principal and interest to the third day of May, 1881, upon the said coupons held by the said firms respectively, as stated in said report, amounting to the sum of $18,300.52 to said Morton, Bliss & Co., $21,911.41 to said Clarke, Post & Martin, $44.70 to said Knauth, Nachod & Kuhne; and that said master cancel and deposit said coupons as the same are paid in like manner as directed in the case of those held by the Union Trust Company. And it is further ordered that the said Charles L. Perkins, as special master, give the public notice by advertisement to be inserted in such newspapers, and for such periods as he shall deem advisable, that the owners and holders of the other bonds and coupons outstanding secured by said mortgage or deed of trust are required to present the same for payment to him at his office in the city of New York, and that interest on the same has this day ceased; and it is further ordered that upon the presentation to said master of such outstanding bonds for stamping, and of such outstanding coupons for cancellation, at the office of the Union Trust Company, the said company, upon the written order and direction of said master, pay to the owners and holders thereof, respectively, ninety-five per cent. of the principal of said bonds, and all the interest accrued thereon from the 1st day of April, 1881, to the 3d day of May, 1881, and stamp the same upon said bonds as aforesaid, and the entire amount due for principal and interest upon said coupons to the 3d day of May, 1881, and cut off and cancel the same in the manner hereinbefore directed in respect to the other coupons. And it is further ordered that, to enable the Union Trust Company to make the said payments, the complainants' solicitors take and deliver forthwith to said trust company the certificates of deposit this day paid into court, viz. five millions of dollars issued by the said trust company, and three million two hundred dollars issued by the Fidelity Insurance, Trust

and Safe-Deposit Company of Philadelphia, all of which have been made payable to said Union Trust Company, to be held by it subject to the order of this court in this cause, and take from the said Union Trust Company a proper certificate therefor.                                  Hugh L. Bond, Circuit Judge.
Norfolk, May 3, 1881.                                  Ro. W. Hughes, District Judge.

### Decree for Compensation of Mortgage Trustees.

Upon further consideration of the petition of the plaintiffs, trustees, praying for an allowance, &c., filed the 3d day of May, 1881, it is ordered by the court that a commission of two per cent. upon the amount of the sale of the property and franchises of the defendant company be, and the same is hereby, allowed to them in full payment of all their expenses, disbursements, and services in the conduct of this suit, out of which sum thus allowed a reasonable and proper fee is to be paid to M. F. Pleasants, Esq., master, who made said sale; and the said allowance is to be credited by the sum of one hundred thousand dollars already paid to said trustees under former orders of this court. And it is further ordered that the Union Trust Company of New York, upon presentation of a certified copy of this order, do pay to W. D. Shipman, Esq., solicitor for the surviving trustees, plaintiffs, &c., the sum of seventy-two thousand and ten dollars ($72,010).

                                                      Hugh L. Bond, Circuit Judge.
Richmond, June 2, 1881.                               Ro. W. Hughes, District Judge.

### Decree Distributing Balance in Court after Satisfaction of the Mortgage Debt.

And now, March 18, 1882, this cause came on to be heard on motion for transfer of balance of funds in hands of the receivers February 10, 1881, and the distribution of balance of proceeds of sale of the mortgaged premises; and it appearing by the report of Charles L. Perkins, special master, that the remaining bonds mentioned in the report of M. F. Pleasants and Charles L. Perkins, special masters, filed May 3, 1881, to wit, $273,550, with interest thereon at the rate of three per cent. from the 3d day of May, 1881, to wit, $4,445.19, have been paid out of the purchase money heretofore paid into court by the purchaser, under the direction of said Charles L. Perkins, special master, except one bond and certain coupons which are still outstanding; and it also appearing that the purchase of the claim of the state of Virginia secured by the mortgage dated December 22, 1870, by the Norfolk and Western Railroad Company, has been ratified by the general assembly of the said commonwealth; and the Norfolk and Western Railroad Company, claimant of the said funds in the hands of the receivers as purchaser under the terms of the decree and deed of conveyance, and whose right thereto was reserved by the terms of the decree of May 3, 1881, and also as assignee of the claim of the state of Virginia of its claim secured by the mortgage of December 22, 1870, consenting to this decree; and it further appearing that many of the owners of the claims for labor and supplies are resident upon the line of the said Norfolk and Western Railroad, and that said company is the owner by assignment of a majority of the said claims, and is entitled, either as purchaser of mortgaged premises at the sale of February 10, 1881, or as assignee of the claim of the state of Virginia, to the surplus, if any, of the proceeds of sale, and of the net earnings in the hands of the receivers: It is therefore ordered, adjudged, and decreed that the balance of the said proceeds of sale, and the funds in the hands of the receivers, including the special deposit of forty-five thousand dollars in the Exchange National Bank of Norfolk, together with all the accretions of interest, be paid over to said Norfolk and Western Railroad Company, upon the special trust, however, that out of the said funds the said Norfolk and Western Railroad Company shall and will pay the principal of mortgage bond No. 2,652, and all outstanding coupons mentioned in the report of Charles L. Perkins and M. F. Pleasants, as special masters, of May 3, 1881, with interest to May 3, 1881, upon presentation, and shall and will also pay to the lawful owners and holders of claims for labor and supplies the principal of said claims, with interest to the 6th day of June, 1876, in full settlement and discharge thereof; and John S. Wise is hereby appointed special master commissioner to superintend the

payment of said claims, and his certificate of approval shall be a sufficient warrant for such payment; but in case of dispute as to the validity of a claim which shall be presented, or as to the title of the holder, the same may be brought to the attention of the court summarily by motion, jurisdiction of the cause being hereby specially retained for that purpose, and the surplus, if any, shall be taken and received by the Norfolk and Western Railroad Company on account of its claims as assignee of the commonwealth of Virginia, or of labor and supply claims, or as purchasers. And it is further ordered that the clerk of this court do check upon the Exchange National Bank of Norfolk, in favor of the Norfolk and Western Railroad Company, for the sum of two hundred and forty-five thousand two hundred and six 44/100 dollars, upon the Union Trust Company for the sum of twenty-nine thousand nine hundred and twenty-four 37/100 dollars; and that the receivers do pay over to the Norfolk and Western Railroad Company the balance of the funds in their hands after the deduction of the allowances this day made.                                          Hugh L. Bond, Circuit Judge.
Norfolk, March 18, 1882.                       Ro. W. Hughes, District Judge.

### Decree Discharging Receivers.

This cause came on again this day to be heard, and it appearing to the court that Charles L. Perkins and Henry Fink, who, by the order and decree of this court, entered herein on the ——— day of July, 1876, were jointly appointed receivers in this cause, have fully discharged to the satisfaction of the court all and singular the duties enjoined upon them as such receivers by the said order and decree, and all subsequent orders and decrees herein entered, and that their accounts down to this time have been duly allowed by M. F. Pleasants, Esq., master, to whom the same were referred, which said accounts have been approved and confirmed by the court; and it further appearing that they have turned over and delivered up all the property and moneys in their possession and custody as such receivers, as required by the final decree and subsequent orders entered in this cause: Now, on motion of Legh R. Page, Esq., counsel for said receivers, it is ordered, adjudged, and decreed that the said receivers, and each of them, be, and they are hereby, finally discharged from their said receivership, and from all accountability and liability as such receivers; and it is further ordered and decreed that the bonds given and filed by said receivers, severally, for the faithful discharge of their duties in the premises respectively, to wit, the bond of the said Charles L. Perkins, executed on the 8th day of June, 1876, with Richard T. Wilson and Edward Cooper as his securities, filed and approved by the court on the 12th day of June, 1876, and the bond of the said Henry Fink, executed on the 7th day of June, 1876, with Thomas L. Bocock and Charles W. Statham as his securities, filed and approved by the court June 12, 1876, be, and the same are hereby, vacated and annulled; and the clerk of this court is hereby directed to deliver up the said bonds to the said receivers, respectively, for cancellation.                Hugh L. Bond, Circuit Judge.
Richmond, March 17, 1882.                      Ro. W. Hughes, District Judge.